1   Sean M. Carroll, AZ Bar No. 027171
    **Clark Hill PLC**
2   14850 N. Scottsdale Rd., Suite 500
    Scottsdale, AZ 85254
3   Telephone: 480.684.1100
    Facsimile:  480.684.1199
4   Email:      scarroll@clarkhill.com

5   Attorneys for Plaintiffs

6

7                   **IN THE UNITED STATES DISTRICT COURT**

8                   **IN AND FOR THE DISTRICT OF ARIZONA**

9   DPG Investments, LLC; and                 Case No.:
    DPG Golden Eagle, LLC,
10                                             **COMPLAINT**
                Plaintiffs,
11  vs.                                        **(BREACH OF FIDUCIARY DUTY
                                               AND VIOLATION OF
12                                             COMPUTER FRAUD AND
    Westley G. Anderson; and                   ABUSE ACT)**
13  John Does 1-10,
                                               **JURY TRIAL REQUESTED**
14              Defendants.

15

16

17

18          Plaintiffs DPG Investments, LLC, and DPG Golden Eagle, LLC (collectively, the

19  "Affiliated Entities"), by and through undersigned counsel, hereby file their Complaint for

20  Breach of Fiduciary Duty and Violation of the Consumer Fraud and Abuse Act against

21  Defendants Westley G. Anderson ("Defendant" or "Anderson") and John Does 1-10.

    Plaintiffs allege as follows:
22
                    **I.      THE PARTIES**
23
            1.      DPG Investments, LLC ("DPG") is a Nevada Limited Liability Company with
24
    its principal place of business located at 2705 South Alma School Road, Suite 2, Chandler,
25
    Arizona 85286.
26

27

28

2.    DPG Golden Eagle, LLC is an Arizona Limited Liability Company with its principal place of business at 7373 East Doubletree Ranch Road, Suite 220, Scottsdale, Arizona 85258.

3.    Anderson is a citizen of the State of Arizona who resides at 10325 East Celestial Drive, Scottsdale, Arizona 85262.

4.    Additional parties, John Does 1-10, are currently unknown to Plaintiffs. Therefore, Plaintiffs sue these Defendants by such fictitious names. Plaintiffs will amend their complaint to allege John Does 1-10's true names when they are ascertained.

## II.    JURISDICTION & VENUE

5.    The Court has personal jurisdiction over Anderson because Anderson is a citizen of Arizona, resides in Arizona, and committed the acts alleged herein in the State of Arizona.

6.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because this civil action arises under 18 U.S.C. § 1030 *et. seq,* the Consumer Fraud and Abuse Act ("CFAA").

7.    This Court has supplemental jurisdiction over Plaintiffs' state law breach of fiduciary duty claim pursuant to 28 U.S.C. § 1367 because it arises out of the same case or controversy as Plaintiffs' CFAA claim insofar as the conduct giving rise to the CFAA claim also forms a part of the pattern of conduct giving rise to the state law breach of fiduciary duty claim.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Anderson resides in this district and all, if not the majority, of the conduct and harm complained of herein occurred in this district.

## III.    FACTUAL BACKGROUND

### The Affiliated Entities

9.    DPG is a multi-strategy private equity, merchant banking, alternative investment, multi-family office advisory firm. It executes its investment strategies through

1    various commonly owned or controlled affiliates and subsidiaries including, but not limited

2    to, DPG Golden Eagle, which is an Arizona limited liability company.

3         10.    Daniel Galvanoni ("Galvanoni") is, and was at all times relevant to this action,

4    the senior most officer with each of the Affiliated Entities and the individual with the sole and

5    exclusive authority to authorize the disclosure of non-public information belonging to the

6    Affiliated Entities.

7         11.    The Affiliated Entities invested in the operation of, and attempted to

8    successfully operate, a subprime auto loan servicing and origination business through various

9    corporate entities organized in the State of Georgia (the "Subprime Finance Venture").

10        12.    Among others, John Marshall, a California resident, provided capital to the

11   Affiliated Entities to be used in support of the Subprime Finance Venture.

12                   Anderson's Connection to the Affiliated Entities

13        13.    For a period of time, Defendant held various senior management positions with

14   DPG and DPG Golden Eagle. This action arises out of Defendant's conduct while he was an

15   officer, manager, and director of the Affiliated Entities.

16        14.    Defendant met Galvanoni, through his brother Troy Anderson ("Troy").

17        15.    Beginning in or around 2008, Galvanoni developed a close business relationship

18   with Troy through PEM Group, where Troy worked.  Before Troy introduced Defendant to

19   Galvanoni, PEM Group had offered DPG financing on multiple occasions.

20        16.    After working with Troy at PEM Group, Galvanoni came to know Troy well

21   and trust his business judgment

22        17.    In early 2015, Anderson, who was unemployed at the time, approached

23   Galvanoni about a management position with DPG. Troy told Galvanoni that Defendant was

24   a trustworthy and reliable individual. Defendant also represented to Galvanoni that he was a

25   sophisticated business man, detail oriented, and that these skills, and others, would allow him

26   to add value to DPG's business operations.

27        18.    Knowing that DPG was an investment company, which requires access to

28   capital, Anderson also represented to Galvanoni that he had access to significant financial

ClarkHill\93764\409144\260154200.v1-7/13/20

resources. Specifically, Anderson stated that his wife had significant financial resources, and Anderson's access to these finances was not limited by a prenuptial agreement. Anderson indicated that his wife's family was worth hundreds of millions of dollars. Anderson also claimed that his uncle and father were both wealthy, and that his uncle could help DPG with the Subprime Finance Venture.

19.     At all times relevant to the claims asserted herein, Anderson was Chief Operating Officer of DPG.

20.     As Chief Operating Officer of DPG, Anderson had responsibility for oversight and administration of all DPG affiliates, including DPG Golden Eagle.

21.     At all times relevant to the claims asserted herein, Anderson was a corporate officer of DPG Golden Eagle.

Anderson's Misconduct

22.     During Defendant's time as a corporate director and officer of the Affiliated Entities he disclosed to Mr. Marshall sensitive non-public information belonging to the Affiliated Entities.

23.     Defendant disclosed this non-public information without Galvanoni's authorization. Defendant disclosed this non-public information without authorization of any kind whatsoever.

24.     Defendant disclosed to Mr. Marshall information that Defendant accessed through deceptive and surreptitious means (the "Unauthorized Information").

25.     Defendant disclosed to Mr. Marshall information Defendant had access to as a corporate director and officer of the Affiliated Entities, but which information he was not authorized to share with Mr. Marshall (the "Beyond Authorized Use Information").

26.     Defendant disclosed to Mr. Marshall information he knew to be false when it was disclosed (the "False Information").

27.     On at least one occasion, Defendant accessed the Unauthorized Information by taking a picture of Galvanoni's computer screen when Galvanoni was not in his office. Several

1   e-mails were accessed by Defendant in this manner and subsequently transmitted to Mr.
2   Marshall without authorization from Galvanoni.

3        28.    The Beyond Authorized Use Information was accessed by Defendant in his
4   capacity as an officer and director of the Affiliated Entities. In his role as an officer and
5   director, Defendant had access to recorded conversations, text messages, and e-mails which
6   John Marshall did not have access to. Although Defendant was authorized to access this
7   information, sharing this information with John Marshall exceeded his authorization and
8   caused harm to the Affiliated Entities.

9        29.    The False Information was information that Defendant fabricated about the
10  Affiliated Entities and Dan Galvanoni. This information consisted of allegations that Dan
11  Galvanoni was stealing from the Affiliated Entities and effectively looting the Affiliated
12  Entities.

13                      Legal Action Initiated by Mr. Marshall

14       30.    On March 9, 2017, Mr. Marshall brought suit in the California State Court
15  system against, among others, the Affiliated Entities. That lawsuit was removed to the United
16  States District Court for the Eastern District of California (Case No. 2:17-cv-00820-KJM)
17  (the "California Litigation").

18       31.    In the California Litigation, Mr. Marshall alleged fraud-intentional
19  misrepresentation, negligent misrepresentation, fraud-false promise, fraud-omissions, breach
20  of fiduciary duty, professional negligence, breach of oral contract, breach of the implied
21  covenant of good faith and fair dealing, rescission, money had and received, money lent, and
22  violations of the California Corporations Code §§ 25401, 25504, and 25504.

23       32.    Through the foregoing unauthorized disclosures, Defendant prompted
24  Mr. Marshall to initiate the California Litigation.

25       33.    Plaintiffs deposed Mr. Marshall in the California Litigation.

26       34.    During his deposition, Mr. Marshall stated he thought his investment was not
27  being used in the manner it should have—to buy loans—because of information he received
28  from Defendant.

35.     During his deposition, Mr. Marshall also stated that his allegation to the Federal Bureau of Investigation that Dan Galvanoni was improperly comingling personal finances with company finances was based on information he received from Defendant.

36.     During his deposition, Mr. Marshall also stated that his belief that Dan Galvanoni was committing waste—a cause of action he pursued in the California Litigation—was based on information he received from Defendant.

37.     During his deposition, Mr. Marshall also stated that his major concerns regarding the prospects of his investments in the Affiliated Entities began with e-mails he received from Defendant.  The relevant excerpts of Mr. Marshall's deposition testimony are attached as **Exhibit A** to this Complaint.

38.     The California Litigation settled after over two years of litigation.

39.     Over the course of the California Litigation, and in connection therewith, the Affiliated Entities incurred several hundred thousand dollars in legal fees and defense costs.

40.     The California Litigation prevented the Affiliated Entities from refinancing existing credit facilities and otherwise secure additional debt financing necessary to operate.

41.     As a direct result of the foregoing inability to refinance and secure additional financing, the Affiliated Entities lost hundreds of thousands of dollars in potential profits at a minimum.

42.     During discovery in the California Litigation, Plaintiffs learned for the first time of Defendant's misconduct alleged herein. Prior to that point, Plaintiff both actively and passively (by omission) concealed this conduct from Plaintiffs and their principals.

<u>Securities and Exchange Commission Investigation</u>

43.     Because of Defendant's actions, including false information spread by Defendant, the Securities and Exchange Commission ("SEC") conducted an investigation into DPG Investments LLC.

44.     Defendant spread false information about DPG Investments LLC directly to the SEC with the intent that the SEC would conduct such an investigation.  Defendant used John Marshall's relationship with a member of the Federal Bureau of Investigation ("FBI") to

1  spread false information to the SEC.  Defendant did this in order to harass, intimidate, and
2  burden DPG Investments LLC.

3       45.    Upon information and belief, Defendant has a record of doing this in an effort
4  to harass and intimidate other companies.

5       46.    In order to comply with the SEC investigation, DPG Investments LLC and its
6  counsel had to travel to Washington DC to participate in the investigation.  Before arriving in
7  Washington DC, DPG Investments LLC had no idea what the investigation was about—only
8  that they were being investigated.  DPG Investments LLC also had to hire special SEC
9  counsel.  DPG Investments LLC incurred extensive legal fees and other costs in order to
10  comply with the SEC's investigation.

11       47.    As a result of the SEC's investigation, DPG Investments LLC also lost
12  investment funding that it had previously secured from Spartan Financial.  Spartan Financial
13  cited the SEC's investigation as the reason that it decided to withdraw funding.

14       48.    If DPG Investments LLC had not lost this funding, it would have remained in a
15  sound financial position.

16       49.    After its investigation, the SEC decided that no enforcement action was
17  necessary.  The SEC's notice of its conclusion is attached as **Exhibit B** to this complaint.  By
18  the time the SEC reached this conclusion, DPG Investments LLC had already lost its funding
19  and could not make the investments for which it originally secured funding.

20

21                    <u>**FIRST CAUSE OF ACTION**</u>

22                    **(Breach of Fiduciary Duty)**

23       50.    Plaintiffs hereby adopt and incorporate by reference the allegations contained
24  in all preceding paragraphs.

25       51.    As an officer of DPG, Defendant owed DPG certain common law fiduciary
26  duties, such as the duty of care, the duty of good faith, and the duty of loyalty.

27

28

52.     As manager and officer of DPG Golden Eagle, Defendant owed DPG Golden Eagle certain common law fiduciary duties, such as the duty of care, the duty of good faith, and the duty of loyalty.

53.     The foregoing duties required that Defendant act in the best interests of DPG and DPG Golden Eagle and to put the interests of DPG and DPG Golden Eagle ahead of his own and others.

54.     Defendant breached those duties by disclosing to Mr. Marshall the Unauthorized Information, the Beyond Authorized Use Information, and the False Information as set forth above.

55.     As a proximate result of the foregoing breaches, Plaintiffs were financially harmed in an amount to be proven at trial. Such damages include both direct, consequential and special damages, which include the defense costs and attorneys' fees incurred in the California Litigation.

## SECOND CAUSE OF ACTION

### (Breach of Computer Fraud and Abuse Act)

56.     Plaintiffs hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs.

57.     Defendant breached the Consumer Fraud and Abuse Act ("CFAA") codified at 18 U.S.C. §1030 *et. seq*.

58.     Defendant breached §1032(a)(2), (4), and (a)(5)(A)(iii) of the CFAA by accessing the Not Authorized Information, which he retrieved without authorization from Dan Galvanoni's computer and sent to John Marshall on August 3, 2016.  Attached as **Exhibit C** to this Complaint is the August 3, 2016 e-mail exchange between Defendant and John Marshall including some Not Authorized Information.

59.     Although Defendant did have access to some information through his role with the affiliated entities, the Not Authorized Information was retrieved by taking photographs of e-mails on Galvanoni's computer when Galvanoni was temporarily absent.

60.     In this instance, Defendant was not authorized to access Galvanoni's computer and only gained access through dishonest and surreptitious means.

61.     Without resorting to dishonest and surreptitious means, Defendant would not have had access to the Not Authorized Information.

62.     This unauthorized access constitutes a breach of §§ 1032(a)(2), 1032(a)(4), and 1032 (a)(5)(A)(iii) of the CFAA.

63.     To the extent that Defendant *was* authorized to access certain other documents or communications as a result of his role within the Affiliated Entities, his access exceeded that authorization when he shared the Beyond Authorized Use information with John Marshall.

64.     The Beyond Authorized Use information consisted of at least the following:

a. A recording of a phone call that John Marshall was not on, which Defendant sent to him on July 29, 2016.

b. A recording of a phone call that John Marshall was not on, which Defendant sent to him on Monday, August 1, 2016.

c. A screenshot of a text conversation that John Marshall was not a party to, which Defendant sent to him on Monday, August 1, 2016.

d. An e-mail exchange regarding financial withdrawals from an entity which John Marshall was invested in, which Defendant sent to him on August 9, 2016.

65.     Defendant's sharing of the Beyond Authorized Use information with John Marshall constitutes a breach of §§ 1032(a)(2) and 1032(a)(4) of the CFAA.

66.     Defendant's breach of the CFAA has caused damage to Plaintiffs in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully requests that the Court render judgment as follows:

ClarkHill\93764\409144\260154200.v1-7/13/20

1. Declaring that Defendant Westley G. Anderson breached his fiduciary duties of loyalty, care, and good faith owed to Plaintiffs;

2. Declaring that Defendant Westley G. Anderson breached the Consumer Fraud and Abuse Act;

3. Awarding damages (including actual, direct, consequential, and special) to Plaintiffs in an amount to be proven at trial, including reimbursement for:

      a.  Legal fees incurred in complying with the SEC's investigation,

      b.  Lost profits from the lost financing during the SEC's investigation,

      c.  Legal fees incurred in fighting the California Litigation,

      d.  All other costs incurred as a result of the California Litigation;

4. Awarding punitive damages against Defendant, where appropriate;

5. Awarding costs, attorneys' fees and expenses to Plaintiffs; and

6. Awarding such other relief that the Court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38, Plaintiffs demand a trial by jury for all issues so triable.

This the 13th day of July, 2020.

**CLARK HILL PLC**


By:  _s/ Sean M. Carroll_
      Sean M. Carroll, AZ Bar No. 027171
      Clark Hill PLLC
      14850 N. Scottsdale Rd., Suite 500
      Scottsdale, AZ 85254
      Telephone: 480.684.1100
      Facsimile:  480.684.1199
      Email:      scarroll@clarkhill.com
      *Attorneys for Plaintiffs*