DPG Investments, LLC; and
DPG Golden Eagle, LLC
v.
Westley G. Anderson

**INDEX OF EXHIBITS TO COMPLAINT**

1. Relevant excerpts of Mr. Marshall's deposition testimony

2. SEC's notice of its conclusion

3. August 3, 2016 e-mail exchange between Defendant and John Marshall

# EXHIBIT A

| | | |
|---|---|---|
| 1 | he was going to do, and we've had emails with him and | 03:03:32PM |
| 2 | his team, and the things that Dan Galvanoni was telling | 03:03:35PM |
| 3 | me that, John, you're family to me, John, your money is | 03:03:40PM |
| 4 | going to be secure, you're going to be oversecured, | 03:03:47PM |
| 5 | you're the only one that's going to be secured, don't | 03:03:49PM |
| 6 | worry about it.  You know, I've got your back.  We can | 03:03:53PM |
| 7 | sell the loans.  You'll get your money.  And I was very | 03:03:56PM |
| 8 | concerned.  It's a lot of money to me, and I did not | 03:03:59PM |
| 9 | want to lose the money. | 03:04:02PM |
| 10 | 　　　　　And so, yes, I felt that he was looking out for | 03:04:07PM |
| 11 | my best interests.  I felt that he was a friend, that he | 03:04:12PM |
| 12 | was going to protect my money and think of me first and | 03:04:16PM |
| 13 | foremost and that, you know, he said he would secure up | 03:04:19PM |
| 14 | the money and that, you know, that he would be | 03:04:29PM |
| 15 | protecting me and taking care of me.  And I didn't you | 03:04:38PM |
| 16 | know -- I had very little background, and I trusted him | 03:04:41PM |
| 17 | emphatically. | 03:04:46PM |
| 18 | 　　Q.  So going from using your words trusting him, | 03:04:47PM |
| 19 | when did you change to not trusting him? | 03:04:50PM |
| 20 | 　　A.  When I started getting information and being | 03:04:52PM |
| 21 | told that, you know, that my money wasn't being used to | 03:05:09PM |
| 22 | buy loans and that I was being told other things and | 03:05:20PM |
| 23 | being sent and showed other things that there was some | 03:05:33PM |
| 24 | major issues and major concerns going on. | 03:05:41PM |
| 25 | 　　Q.  Okay.  And that's what I'm trying to get at. | 03:05:44PM |



| | | |
|---|---|---|
| 1 | So was your belief that the money that you put in was | 03:05:46PM |
| 2 | not -- using your words, not being used to buy loans, | 03:05:51PM |
| 3 | did that belief come from Wes Anderson telling you these | 03:05:55PM |
| 4 | things or showing you these things?  Is that where the | 03:05:59PM |
| 5 | source of this belief came from? | 03:06:06PM |
| 6 |     A.  Yes. | 03:06:07PM |
| 7 |     Q.  Okay.  Are you aware that Wes Anderson was | 03:06:12PM |
| 8 | never the CEO of DPG Investments? | 03:06:22PM |
| 9 |     A.  No, I was not aware of that. | 03:06:31PM |
| 10 |    Q.  And in Arizona -- let's go back to California | 03:06:34PM |
| 11 | before we leave there.  Are you aware of the | 03:06:39PM |
| 12 | investigation by the State of California or this BDO | 03:06:42PM |
| 13 | department -- or DBO department is still ongoing? | 03:06:46PM |
| 14 |    A.  I am not sure. | 03:06:58PM |
| 15 |    Q.  What information did you send to the DBO | 03:06:59PM |
| 16 | division, aside from this email in your hand? | 03:07:04PM |
| 17 |    A.  I'm not positive what I sent them. | 03:07:49PM |
| 18 |    Q.  Did you provide them a physical file via mail | 03:07:51PM |
| 19 | or did you email them a file or both? | 03:07:56PM |
| 20 |    A.  I just don't recall. | 03:08:01PM |
| 21 |    Q.  Did you meet with anyone in person from the DBO | 03:08:18PM |
| 22 | division? | 03:08:23PM |
| 23 |    A.  I don't think I did. | 03:08:24PM |
| 24 |    Q.  Did you meet with anyone in person with the | 03:08:58PM |
| 25 | Arizona investigation securities team? | 03:09:01PM |



| | | |
|---|---|---|
| 1 | share Jerry Hudspeth resignation with Agent Paulin, was | 03:38:07PM |
| 2 | that accurate? | 03:38:13PM |
| 3 |    A.  Yes. | 03:38:14PM |
| 4 |    Q.  And even though Jerry ultimately decided not to | 03:38:18PM |
| 5 | resign; isn't that correct? | 03:38:21PM |
| 6 |    A.  Yes. | 03:38:23PM |
| 7 |    Q.  Aside from these emails that you've seen, have | 03:38:28PM |
| 8 | you sent any other emails to Agent Paulin or anyone else | 03:38:33PM |
| 9 | at the FBI? | 03:38:36PM |
| 10 |    A.  I'm not sure.  I don't think so. | 03:38:38PM |
| 11 |    Q.  One of your allegations in your complaint | 03:39:11PM |
| 12 | concerns Dan Galvanoni committing waste, are you | 03:39:17PM |
| 13 | familiar with that, wasting company assets on personal | 03:39:22PM |
| 14 | things? | 03:39:25PM |
| 15 |    A.  I would have to go back and look and see.  I'm | 03:39:28PM |
| 16 | trying to think of what you're referring to. | 03:39:43PM |
| 17 |    Q.  Do you believe that Dan Galvanoni wasted | 03:39:45PM |
| 18 | company resources? | 03:39:47PM |
| 19 |    A.  Yes. | 03:39:56PM |
| 20 |    Q.  Do you base that allegation off of the | 03:39:57PM |
| 21 | information Wes Anderson told you about or anything else | 03:40:02PM |
| 22 | or both? | 03:40:05PM |
| 23 |    A.  Yes, information from Wes Anderson. | 03:40:10PM |
| 24 |    Q.  Is it your contention that you were defrauded, | 03:40:16PM |
| 25 | is that based upon what Wes Anderson has told you or | 03:40:19PM |



JOHN MARSHALL  March 14, 2019
JOHN MARSHALL vs DANIEL GALVANONI  212

```
 1  other factors?                                              03:40:25PM
 2      A.  Yes, things that Wes Anderson has told me, and      03:40:32PM
 3  you know, all the other things.                             03:40:44PM
 4      Q.  Okay.  Are you aware that Dan Galvanoni has         03:40:47PM
 5  lost money in these ventures?                               03:40:50PM
 6      A.  No, I have not seen if he has lost money in         03:40:51PM
 7  these.                                                      03:41:01PM
 8      Q.  Are you aware that Dan's brother, Phil              03:41:01PM
 9  Galvanoni, has lost money in these ventures?                03:41:06PM
10          MS. STEUER:  Objection.  Lacks foundation.  You     03:41:09PM
11  can answer.                                                 03:41:10PM
12          MR. KAUFMAN:  I'm just asking if he's aware.        03:41:10PM
13          THE WITNESS:  I'm not sure if they have or          03:41:12PM
14  haven't.                                                    03:41:15PM
15  BY MR. KAUFMAN:                                             03:41:15PM
16      Q.  Are you aware that trusts or Dan's mother have      03:41:15PM
17  lost money in these ventures?  These ventures meaning       03:41:20PM
18  these subprime DPG affiliated ventures.                     03:41:23PM
19      A.  I'm not sure.                                       03:41:28PM
20      Q.  Why aren't you sure?                                03:41:34PM
21      A.  I've never been given that information.             03:41:35PM
22      Q.  What information would, if provided to you,         03:41:37PM
23  make you sure?                                              03:41:44PM
24      A.  The things that would be provided to me would       03:41:47PM
25  be financial information, that's credible financial         03:41:54PM
```



| | | |
|---|---|---|
| 1 | we'll talk with a top attorney to cover us on corp and | 05:24:35PM |
| 2 | bankruptcy issues.  We don't want to incur attorneys' | 05:24:38PM |
| 3 | fees to fight creditors if Jim BKs companies.  Thank | 05:24:41PM |
| 4 | you, John Marshall." | 05:24:48PM |
| 5 |     Does that refresh your recollection of talking | 05:24:48PM |
| 6 | to these individuals about a corporate bankruptcy | 05:24:50PM |
| 7 | attorney? | 05:24:53PM |
| 8 |   A.  Yeah, I'm always an advocate that you should | 05:24:54PM |
| 9 | have -- getting an attorney involved and having legal | 05:24:57PM |
| 10 | advice. | 05:24:59PM |
| 11 |   Q.  What would have happened if SkiBo would have | 05:25:00PM |
| 12 | gone into bankruptcy? | 05:25:05PM |
| 13 |     MS. STEUER:  Objection.  Calls for speculation. | 05:25:06PM |
| 14 | You can answer, if you know. | 05:25:08PM |
| 15 | BY MR. HUGHES: | 05:25:08PM |
| 16 |   Q.  Let me ask it this way.  What is your | 05:25:10PM |
| 17 | understanding of what would happen, what would have | 05:25:12PM |
| 18 | happened to your interest in SkiBo if the company went | 05:25:14PM |
| 19 | into bankruptcy? | 05:25:18PM |
| 20 |     MS. STEUER:  Objection. Vague.  Calls for a | 05:25:19PM |
| 21 | legal conclusion.  Expert opinion.  You can answer, if | 05:25:21PM |
| 22 | you have an understanding. | 05:25:24PM |
| 23 |     THE WITNESS:  Well, my understanding was when I | 05:25:26PM |
| 24 | talked with Dan Galvanoni that if it did go into | 05:25:29PM |
| 25 | bankruptcy, my money was used to -- you know, the money | 05:25:36PM |



| | | |
|---|---|---|
| 1 | that we used that I put up was to purchase the loans, | 05:25:40PM |
| 2 | and that, you know, I would want to try to recover my | 05:25:46PM |
| 3 | money and hopefully be able to sell the loans so I can | 05:25:50PM |
| 4 | get my money back. | 05:25:54PM |
| 5 | BY MR. HUGHES: | 05:26:00PM |
| 6 |    Q.  I just want to make sure I understood your | 05:26:00PM |
| 7 | testimony from earlier today.  To the best of your | 05:26:03PM |
| 8 | recollection, you only attempted to solicit other | 05:26:07PM |
| 9 | investors for this company on a single occasion?  Am I | 05:26:10PM |
| 10 | understanding that correct? | 05:26:14PM |
| 11 |       MS. STEUER:  Objection.  That misstates his | 05:26:15PM |
| 12 | testimony.  Vague.  And lacks foundation.  You can | 05:26:16PM |
| 13 | answer. | 05:26:19PM |
| 14 |       THE WITNESS:  Well, I wasn't actively going out | 05:26:21PM |
| 15 | and trying to get people, but being out and about, if | 05:26:23PM |
| 16 | somebody talked to me about investments or said, hey, | 05:26:34PM |
| 17 | John, do you do annuities or life insurance or what kind | 05:26:39PM |
| 18 | of investments do you invest in, or something like that, | 05:26:42PM |
| 19 | I wanted to -- I shared with them that I invested, you | 05:26:47PM |
| 20 | know, in these auto loans.  And I shared the information | 05:26:52PM |
| 21 | that Dan Galvanoni shared with me and told me that, you | 05:26:59PM |
| 22 | know, these are -- I think this is a pretty good | 05:27:03PM |
| 23 | investment at the time.  I thought they were fantastic | 05:27:07PM |
| 24 | because it was diversified.  It was a lot better than | 05:27:10PM |
| 25 | real estate.  You know, real estate takes a long time to | 05:27:13PM |



# EXHIBIT B



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F Street, N.E.
Washington, DC 20549-5041

**DIVISION OF**
**ENFORCEMENT**

**YURI B. ZELINSKY**
**ASSISTANT DIRECTOR**

March 23, 2020

BY ELECTRONIC MAIL

DPG Investments, LLC
c/o Robert Leight, Esquire
Spilman Thomas & Battle, PLLC
301 Grant Street, Suite 3440
Pittsburgh, PA 15219

Re:   In the Matter of DPG Investments, LLC (HO-13366)

Dear Mr. Leight:

We have concluded the investigation as to your client, Daniel Galvanoni. Based on the information we have as of this date, we do not intend to recommend an enforcement action by the Commission against Mr. Galvanoni. We are providing this notice under the guidelines set out in the final paragraph of Securities Act Release No. 5310, which states in part that the notice "must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation." (The full text of Release No. 5310 can be found at: http://www.sec.gov/divisions/enforce/wells-release.pdf.)

Sincerely,

*Yuri B. Zelinsky*

Yuri B. Zelinsky

Direct Dial: 202-551-4769 / Email: zelinskyy@sec.gov / Facsimile: 202-772-9227

# EXHIBIT C

| | |
|---|---|
| **Subject:** | (none) |
| **Date:** | Wednesday, August 3, 2016 at 10:57:44 AM Mountain Standard Time |
| **From:** | Westley Anderson |
| **To:** | Marshall John |
| **Attachments:** | IMG_2128.JPG, IMG_2129.JPG, IMG_2130.JPG, IMG_2131.JPG, IMG_2132.JPG |













Thanks,

Westley G. Anderson

NXG Financial
<u>7373 E Doubletree Ranch Rd | Suite 220</u>
<u>Scottsdale, AZ 85258</u>

Office 855.694.2694| Fax 855.694.3255
westley.anderson@nxgfinancial.com

Confidentiality/Disclaimer Statement
The information contained in this electronic message is attorney privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited.